# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

PEDRO ZENO

**MAGISTRATE JUDGE VALDEZ**

FILED
J:N April 21, 2008
APR 2 1 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CRIMINAL COMPLAINT

CASE NUMBER: **08CR 332**

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about July 9, 2007, in Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant, Pedro Zeno,

being an agent of the State, corruptly solicited and demanded, and accepted and agreed to accept, things of value, namely, a $300 cash payment, intending to be influenced in his capacity as an Illinois Department of Employment Security claims processor, in a transaction involving a thing of value of $5,000 or more, involving the State, being an agency that received in excess of $10,000 in federal funding in a period from July 20, 2006, to July 20, 2007;

In violation of Title 18, United States Code, Section 666(a)(1)(B).

I further state that I am an Special Agent, United States Department of Labor Office of Inspector General, and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:  _X_ Yes   ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

April 21, 2008                at         Chicago, Illinois
Date                                         City and State

_____
Maria Valdez
U.S. Magistrate Judge

_____
Signature of Judicial Officer

## AFFIDAVIT

1. Your affiant, Frederick K. Lane, Special Agent with the United States Department of Labor, Office of Inspector General, being duly sworn under oath, states as follows:

### INTRODUCTION

2. I am assigned as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud Investigations ("DOLOIG"). I have been a Special Agent with the DOLOIG for more than 3 years. I am currently assigned to the Chicago office, where I investigate fraud associated with the Illinois Department of Employment Security (IDES), Labor Racketeering and other federal criminal offenses associated with programs administered by the Department of Labor and associated with union funds or officials. My prior law enforcement experience includes serving as a Special Agent with the United States Department of Health and Human Services, Office of Inspector General and 14 years with the Chicago Police Department as a Police Officer and Sergeant. I have received training in the enforcement of laws, including white-collar crime. I have conducted and participated in criminal investigations utilizing the normal methods of investigation, including, but not limited to, interviewing of witnesses, collecting evidence and analyzing documents.

3. The factual information contained in this application and affidavit is based upon my investigation and upon information provided to me by other law enforcement agents. This affidavit is provided for the sole purpose of establishing probable cause to charge PEDRO ZENO, with a violation of Title 18, United States Code, Section 666(a)(1)(B). Because the purpose of this affidavit is limited to establishing probable cause, I have not listed every fact of which I am aware pertaining to this investigation. Where statements

of others are set forth in this Affidavit, they are set forth in substance and are not verbatim.

4. In summary, and as set forth in more detail below, the evidence developed to date shows that PEDRO ZENO and others are perpetrating a scheme to defraud the IDES out of Unemployment Insurance (UI) benefits. PEDRO ZENO has carried out this scheme by accepting cash bribes in the form of United States currency in exchange for performing official acts, to wit: processing and approving false and fraudulent UI claims for payment by IDES.

5. PEDRO ZENO is an employee of the IDES, a governmental agency of the State of Illinois. IDES receives more that $100 million annually from the U.S. Department of Labor to support the administration of the UI Program.

6. PEDRO ZENO has worked for the IDES for more than 30 years. Most recently, PEDRO ZENO was a claims processor. In this job, PEDRO ZENO dealt with UI claimants who filed UI claims at IDES offices. In his job, PEDRO ZENO met with claimants and received their UI application forms. PEDRO ZENO's duties included, but were not limited to, reviewing UI applications to ensure they were properly completed, verifying claimant identification such as State identification cards, Social Security Cards and Resident Alien Cards, checking the IDES computer system for claimant eligibility, and processing UI claims by entering information into the IDES computer system. Finally, PEDRO ZENO had the authority to approve payment of eligible claims for UI benefits.

**UNEMPLOYMENT INSURANCE**

7. In the United States, unemployment insurance is based on a program governed by Federal and state statutes. State unemployment benefits are financed through employer payroll taxes which are held in individual state

trust fund accounts in the U.S. Treasury's Federal Unemployment Trust Fund. Federal law prohibits the use of these funds for any purpose other than payment of unemployment benefits. Each State administers a separate unemployment insurance program within guidelines established by Federal law.

8. At all times material to this affidavit, IDES operates the State of Illinois UI program (both benefits and revenue collection), Illinois employment services, job training and special workforce development. UI benefits are paid to Illinois residents to assist unemployed workers. This employer-funded program provides temporary income replacement for individual workers who lose their jobs through no fault of their own. The UI system provides financial support to unemployed workers in order assist them to regain employment.

9. Social Security Numbers (SSN) are used to file UI claims. As set forth in more detail below, in the course of this scheme, the UI claims submitted to IDES used SSNs that were (i) assigned to someone other than the individual identified on the UI claim form, (ii) assigned to persons who were deceased, or (iii) otherwise invalid.

10. I have been told by IDES officials that claimants are eligible for UI benefits if they meet certain requirements, including but not limited to: being lawfully entitled to work in the United States, having worked four of the last five quarters, and having earned at least $440 in two of the quarters reported by the employer for the claimant. Claims are good for filing for a maximum of 26 weeks of payments out of 52 weeks from the time they become unemployed. Claimant eligibility is tracked in the IDES computer system by querying the claimant's SSN.

11. UI benefits are paid to claimants by check on a bi-weekly basis. IDES officials advised me that UI benefit checks are automatically generated by

- 3 -

the IDES computer system, when claims are certified via Tele-Serve, a telephone certification system, and sent to claimants via U.S. Mail. In addition, various documents and informational letters are sent to claimants. One such document is a Benefits Findings Letter, which specifies the benefits a claimant is entitled to, based on the information provided in the UI claim form, as well as wage records reported by the employer.

12. IDES officials have told me that its databases may reflect that wages are being paid to more than one person on a single Social Security account number. IDES officials told me that in such cases, multiple names appear in the IDES Monetary Determinations database showing different wage records from different employers, all associated with the same SSN. IDES officials told me that this would be the case if, as an example, an illegal alien working in Illinois provided an SSN assigned to another working person to an employer, and the employer reported wages to IDES.

**INVESTIGATION**

13. Beginning in approximately March 2005, I began an investigation of fraudulent UI claims and payments that were being sent to multiple addresses in Chicago. I learned that these fraudulent claims were based on SSNs that were invalid, assigned to other people or assigned to persons who are deceased. Two addresses, 2122 North Avers, Chicago, Illinois and 2132 North Avers, Chicago, Illinois were identified as receiving multiple UI benefit checks which were based on these fraudulent claims.

14. On November 15, 2006, other law enforcement agents and I executed search warrants at 2122 and 2132 North Avers, Chicago Illinois. I seized numerous documents from these addresses, including fraudulent Resident Alien Cards, fraudulent Social Security cards, fraudulent Illinois driver's

licenses and fraudulent Illinois identification cards. I also seized numerous documents that have been identified as internal IDES documents. I seized documents and papers with identifying information for numerous people, such as names, dates of birth, SSNs, addresses, and employer information. I also seized numerous IDES UI check stubs for multiple persons and for multiple addresses in and around Chicago.

15. During the search warrants, I seized a spiral notebook containing the name "PEDRO SENO" and telephone number "334-6646 ext 237." A representative of IDES has advised me that this telephone number belongs to IDES employee PEDRO ZENO.

16. During the search warrant, I identified and interviewed the owner of 2122 North Avers, Chicago, Illinois, herein referred to as "Individual A." Individual A agreed to cooperate with the government. Individual A admitted that he and another person, hereinafter referred to as "Individual B," were engaged in a UI benefits fraud scheme by causing UI benefit checks to be generated based on fraudulent UI claims. Individual A told me that he previously observed PEDRO ZENO accept cash bribes from Individual B, with whom Individual A engaged in this UI benefits fraud scheme. Individual A told me that PEDRO ZENO processed fraudulent claims for Individual B. Individual A further told me that he had dealt with PEDRO ZENO in person and telephonically regarding fraudulent UI claims that PEDRO ZENO was processing.[1]

---

[1] Individual A has been informed that the government may charge Individual A with a violation of federal criminal law. Individual A has entered into an agreement to cooperate with the government in return for Individual A providing complete and truthful information. No promises have been made concerning what charges may be brought against Individual A nor what sentence Individual A may receive as a result of his/her cooperation.

## UNDERCOVER OPERATIONS AND BRIBES PAID TO PEDRO ZENO

17. Starting on June 28, 2007, and continuing through July 19, 2007, Individual A agreed to wear recording devices and meet with PEDRO ZENO at the IDES office located at 2444 West Lawrence, Chicago Illinois. I gave Individual A a list of names and Social Security numbers and cash. One name on the list was "NORA ACOSTA," associated with the SSN xxx-xx-0969. I knew this Social Security number was invalid, having checked the number with the Social Security Administration. The name NORA ACOSTA and Social Security number xxx-xx-0969 had previously been used in this scheme for filing a fraudulent UI claim, and payments on the claim had previously been mailed to 2122 North Avers, the home address of Individual A.

18. On June 28, 2007, Individual A met with PEDRO ZENO at the IDES office and gave him the list of names and Social Security numbers that did not belong to Individual A. I drove with Individual A to IDES from the offices of the U.S. Postal Inspection Service, where Individual A had been wired with the recording devices. Prior to entering the building, Individual A was searched for contraband and currency. Individual A only entered the building with the currency I gave him. The meeting was recorded and I have reviewed the recording. During the meeting, PEDRO ZENO told Individual A that the name NORA ACOSTA was good for filing a claim. PEDRO ZENO knew that Individual A was not named NORA ACOSTA, which is the name of a female, because ZENO had taken bribes from Individual B on multiple previous occasions in the presence of Individual A, whom he personally knew. PEDRO ZENO asked Individual A for $100 to process the claim for NORA ACOSTA. PEDRO ZENO gave Individual A internal IDES documents showing that NORA ACOSTA was eligible for a UI claim because someone was working under the name and Social Security number. Specifically, these documents were the

IDES Claim Eligibility Monetary Determination and Basic Claim Inquiry for NORA ACOSTA.

19. Pursuant to his cooperation with the government, Individual A paid PEDRO ZENO the $100 he requested for filing the claim. Surveillance agents were stationed outside the IDES building and saw Individual A enter the building before the meeting and exit the building after the meeting.

20. On July 9, 2007, I gave Individual A a partially completed UI claim form for NORA ACOSTA, a Resident Alien Card in the name of NORA ACOSTA and a Social Security Card (xxx-xx-0969) in the name of NORA ACOSTA. The Resident Alien card bore a photograph of a person purporting to be NORA ACOSTA who was not Individual A. I created the Resident Alien Form and a Social Security Card, and gave the blank UI claim form to Individual A, which he then partially completed. I drove with Individual A to IDES from the offices of the U.S. Postal Inspection Service, where Individual A had been wired with the recording devices. Individual A then met with PEDRO ZENO at the IDES office located at 2444 West Lawrence, Chicago Illinois. Prior to entering the building, Individual A was searched for contraband and currency. Individual A only entered the building with the currency I gave him. The meeting was recorded and I have reviewed the recording. During the meeting, Individual A gave ZENO the ACOSTA claim form, the ACOSTA SSN card and the ACOSTA Resident Alien Card. ZENO asked Individual A to sign the ACOSTA UI claim form. ZENO then took the ACOSTA SSN card and the ACOSTA Resident Alien Card from Individual A to make photocopies.

21. Also during the meeting on July 9, 2007, pursuant to his cooperation with the government, Individual A gave PEDRO ZENO a list of names and SSNs that did not belong to Individual A. The list included the names RUBEN MARTINEZ, SSN xxx-xx-7623 and FRANCISCO GARCIA, SSN xxx-xx-8659. These

names and Social Security numbers xxx-xx-0969 had previously been used in this scheme for filing a fraudulent UI claim, and payments on the claims had previously been mailed to 2122 North Avers, the home address of Individual A. PEDRO ZENO queried the SSNs and told Individual A that claims could be filed for MARTINEZ and GARCIA. Individual A paid PEDRO ZENO $300 at his desk. PEDRO ZENO then gave Individual A internal IDES documents related to claims eligibility. Surveillance agents were stationed outside the IDES building and saw Individual A enter the building before the meeting and exit the building after the meeting. When Individual A exited the building, he was again searched and returned to me the Acosta resident alien card, the Acosta Social Security card, and IDES Claim Eligibility Monetary Determinations for Martinez and Garcia.

22. On July 19, 2007, I provided Individual A with four additional names and SSNs, which he wrote on a piece of lined notebook paper. The names and SSNs were ELOY ARROYO SSN xxx-xx-7623, FELIX AVILA SSN xxx-xx-1576, SEFERINO AVENDANO SSN xxx-xx-6363, and FELIPE MEDINA SSN xxx-xx-2882. These names and Social Security numbers had previously been used in this scheme for filing fraudulent UI claims, and payments on the claims had previously been mailed to 2122 North Avers, the home address of Individual A.

23. Individual A then met with PEDRO ZENO at his desk in the IDES office on Lawrence Avenue in Chicago. I drove with Individual A to IDES from the offices of the U.S. Postal Inspection Service, where Individual A had been wired with the recording devices. Prior to entering the building, Individual A was searched for contraband and currency. Individual A only entered the building with the currency I gave him. The meeting was recorded and I have reviewed the recording. PEDRO ZENO agreed to process the false UI claims for MARTINEZ and GARCIA. Individual A then paid PEDRO ZENO $100

(two $50.00 bills), which Individual A placed in an envelope that was open on PEDRO ZENO's desk. Individual A gave PEDRO ZENO partially completed UI claim forms for MARTINEZ and GARCIA and counterfeit Alien Registration cards and Social Security cards for MARTINEZ and GARCIA, which I had created earlier. The Resident Alien cards bore photographs of people purporting to be MARTINEZ and GARCIA, and who were not Individual A. PEDRO ZENO photocopied the Alien Registration cards and Social Security cards and gave them back to Individual A.

24. During the same meeting, Individual A asked PEDRO ZENO if he could provide Individual A with SSNs for claims. PEDRO ZENO said he could provide SSNs for UI claims to Individual A for $500 each. PEDRO ZENO told Individual A that he had a "friend" who could help with providing identities for UI claims. Surveillance agents were stationed outside the IDES building and saw Individual A enter the building before the meeting and exit the building after the meeting.

25. An IDES official queried the IDES computer and identified the potential payout of each of the three names and SSNs that Individual A provided to PEDRO ZENO, for the duration of a 26-week collection period. The payout is based on a percentage of actual earned wages while employed. Also, additional benefits are paid for claimed dependants; however the amount paid does not rise for more than one claimed dependant.

26. The IDES official also provided me with IDES Claim Eligibility Monetary Determinations Reports for each of the SSNs for claims with and without claimed dependants.

| SSN | Name | Maximum Benefit |
| --- | --- | --- |
| xxx-xx-0969 | NORA ACOSTA | $9542-No Dependant Claimed |
|  |  | $12,948-With Dependant Claimed |
| xxx-xx-7623 | RUBIN MARTINEZ | $4290-No Dependant Claimed |

- 9 -

xxx-xx-8659        FRANCISCO GARCIA        $5824-With Dependant Claimed
                                           $4394-No Dependant Claimed
                                           $5980-With Dependant Claimed

27. Based on the information provided by IDES, the total potential benefits for the SSNs provided to PEDRO ZENO by Individual A during undercover operations ranges from $18,226 to $24,752.

28. On February 13, 2008, other law enforcement agents and I interviewed PEDRO ZENO at his residence, 1112 Williamsburg Road, Country Club Hills, IL 60478. PEDRO ZENO described his job duties as a client service representative at IDES. PEDRO ZENO also described how UI claims are processed, including that claimants must show identification to the client service representative. PEDRO ZENO also stated that it was his understanding of IDES policy that UI claims must be filed by the individual claimants, not other persons.

29. PEDRO ZENO recognized Individual A from a photograph, stating that he had seen Individual A in the IDES office previously. PEDRO ZENO denied knowing Individual A or having dealings with Individual A. However, PEDRO ZENO then identified himself in photographs from a covert videocamera worn by Individual A during the aforementioned undercover operations.

30. I submit that based on the information contained in this affidavit, and my experience in investigating unemployment insurance fraud, there is probable cause to believe that PEDRO ZENO, being an agent of the State, corruptly solicited and demanded for the benefit of any person, and accepted and agreed to accept, things of value, intending to be influenced or rewarded in connection with any business, transaction, and series of transactions involving things of value of $5,000 or more of the State of Illinois, an agency that received in excess of $10,000 in federal funding in

a twelve-month period from July 20, 2006 through July 20, 2007, in violation of Title 18, United States Code, Section 666(a)(1)(B).

FURTHER AFFIANT SAYETH NOT:

                                                                Special Agent Frederick K. Lane
                                                                U.S. Department of Labor
                                                                Office of Inspector General

SUBSCRIBED and SWORN TO before me this 21st day of April, 2008.

Maria Valdez
United States Magistrate Judge